IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| RASHAD WILLIAMS,<br><br>   Plaintiff,<br><br>  v.<br><br>JOHN WETZEL, MICHAEL OPPMAN, SANDRA CALLAWAY, RHONDA HOUSE, MARK CAPOZZA, KERI MOORE, DORINA VARNER, SCI FAYETTE, and JOHN/JANE DOES, Director of SPC; JOHN/JANE DOES, Lts. Central Office; TRICIA SILBAUGH, Current Mail Room Supervisor;  and DARLENE LINDERMAN, Former Mailroom Supervisor;<br><br>   Defendants. | Civil Action No.  2: 20-cv-0663<br><br>Chief United States Magistrate Judge Cynthia Reed Eddy |

**MEMORANDUM OPINION[1]**

Pending before the Court are two motions to dismiss:  The Partial Motion to Dismiss or, in the alternative, Motion for Summary Judgment filed by Defendants Callaway, Capozza, House, Moore, Oppman, SCI-Fayette, Varner, and Wetzel (ECF No. 39), to which Williams has

---

[1]   In accordance with the provisions of 28 U.S.C. § 636(c)(1), Plaintiff and the named and served Defendants have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment.  *See* ECF Nos. 25,  50, and 65. While unserved defendants generally must also consent for a magistrate judge to exercise jurisdiction based on "consent of the parties" under that statute, *see Williams v. King*, 875 F.3d 500 (9th Cir. 2017), this Court is unaware of any decision holding that consent is necessary from defendants who are both unserved and unidentified.  Courts disregard such defendants in other contexts, including contexts affecting jurisdiction. *See, e.g.*, 28 U.S.C. § 1441(b)(1) (providing that for removal based on diversity of citizenship, "the citizenship of defendants sued under fictitious names shall be disregarded"); *Fat T, Inc. v. Aloha Tower Assocs. Piers 7, 8 & 9*, 172 F.R.D. 411, 414–15 (D. Haw. 1996) (reaching the same conclusion for diversity jurisdiction over cases first filed in federal court). The Court therefore concludes that consent of the unserved Doe defendants in this case, specifically John/Jane Doe, Director of SPC; John/Jane Does, Lts. Central Office, is unnecessary to proceed under § 636(c).

filed a response in opposition. (ECF No. 47), and the Motion to Dismiss filed by Defendants Linderman and Silbaugh (ECF No. 66),  to which Williams has not responded although he was granted an extension until October 29, 2021, in which to do so. (ECF No. 71).

After carefully considering the motion and briefs, given the standards governing motions to dismiss set forth by the Supreme Court of the United States in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009), and as explained in United States Court of Appeals for the Third Circuit precedent, *see., e.g.*, *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016), [2] and for the following reasons, the motion will be granted in part and denied in part.

## I. Factual and Procedural History

Plaintiff, Rashad Williams (Williams),[3] is a Pennsylvania state prisoner confined at SCI-Fayette. The case was initiated on April 21, 2020, when Williams submitted his Complaint to the United States District Court for the Middle District of Pennsylvania.  (ECF No. 1).   The Complaint was received without the filing fee or a motion for leave to proceed *in forma pauperis* (IFP motion).  On May 4, 2020, Williams filed an IFP motion and, the next day, the

---

[2]    Additionally, a  pro se pleading is held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). As a result, a pro se complaint under § 1983 must be construed liberally, *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." *Alston v. Parker,*  363 F.3d 299, 234 (3d Cir. 2004) (citations omitted).

[3]    Plaintiff is identified in the caption of the Complaint as "Rashad Williams." The caption also indicates that Williams' inmate number at the time of the incidents complained of in the Complaint was JU1628, but that his current inmate number is QC3320.  The name on the return envelope is "Rashad/Melvin Williams."  And while Plaintiff signed his brief in opposition to Defendants' motion to dismiss as "Rashad/M. Williams," he refers to himself in the caption and in the body of the response as "Rashad Williams."  Defendants in their filings refer to the plaintiff as "Rashad Melvin."  *See* ECF 40 at 1.  The PA DOC inmate locator reflects that the inmate number QC3320 is assigned to Melvin Williams, that the prisoner's "true name" is Rashad Williams, and that the prisoner is also known as Rashad Milliams, Lamel Williams, Melvin Lamar Williams, Rashad L. Williams, and Rashad Melisa Williams.

case was transferred to the United States District Court for the Western District of Pennsylvania as the Complaint concerns events that occurred at SCI-Fayette, which is located within the Western District of Pennsylvania. (ECF No. 11). On May 18, 2020, this Court granted Williams's IFP motion and the Complaint was formally filed. (ECF No. 20).

Williams brings his claims under (i) 42 U.S.C. § 1983 for the violation of his rights under the First and Fourteenth Amendments to the United States Constitution contending that Defendants violated his rights "by knowingly depriving spiritual based books which provided Religious instruction to practice upon the ORTHODOXY precepts of Islam" and (ii) under the Religious Land Use and Institutionalized Person Act (RLUIPA), contending that Defendants have substantially burdened his practice of religion by not forwarding to him the religious books he ordered. Named as defendants are the Secretary of Pennsylvania Department of Corrections (DOC) John Wetzel; SCI-Fayette; Superintendent Mark Capozza; Michael Oppman, Business Manager; Sandra Callaway, Inmate Accounting Office; Darlene Linderman, former Mail Room Supervisor; Tricia Silbaugh, current Mail Room Supervisor; Dorina Varner, Chief Grievance Officer; Rhonda House, Grievance Coordinator; Kerri Moore, Assistant Grievance Officer; and John/Jane Doe, Director of SPC, and John/Jane Doe Lts. Central Office.

For purpose of this Memorandum Opinion only, the facts are simple. Williams alleges that on May 23, 2019, he ordered various "religious/Islamic books" from the Islamic Book Store ("IBS"). The SCI-Fayette inmate accounting office deducted $62.90 from his inmate account for pre-payment of the books. Three weeks later, IBS notified Williams that the books he ordered were out of stock; Williams then submitted a different selection of books. When Williams had not received the books he had ordered, he wrote IBS and was informed that the books had been sent on August 5, 2019, to the DOC Security Processing Center in Bellefonte,

PA. According to the Complaint, Williams wrote several requests to various DOC staff members inquiring into the location of his ordered books, including sending two "missives" to the Security Processing Center asking about the books.

On September 12, 2019, he was informed by Defendant Oppman that the books had not arrived yet at SCI-Fayette. On November 15, 2019, Williams "put Mr. Wetzel on notice about not receiving his misplaced, re-routed or theft of his religious books." Complaint, ¶ 9. Defendant Wetzel responded by directing Williams to use the DOC grievance procedure. On November 21, 2019, Williams filed a grievance about his missing books, which grievance went through the administrative review process and was denied upon final review on February 28, 2020. *Id*. at ¶ 21. Williams initiated this lawsuit approximately 2 months after receiving the final denial of his grievance.

Defendants Callaway, Capozza, House, Moore, Oppman, SCI-Fayette, Varner, and Wetzel filed the instant Partial Motion to Dismiss Complaint For Failure to State a Claim Or, In The Alternative, For Summary Judgment, with a brief in support and attached 23 pages of exhibits in lieu of filing an Answer. (ECF No. 39). The Court declines to convert the motion into a summary judgment motion and will only consider the Complaint in connection with Defendants' Rule 12(b)(6) motion. Accordingly, Defendants' motion for summary judgment will be denied without prejudice to Defendants renewing their request for summary judgment after the parties have completed discovery. Plaintiff has responded to the motion (ECF No. 47) and the motion is ripe for consideration.

Defendants Linderman and Silbaugh were substituted for the John/Jane Doe Defendants, and these two defendants filed a motion to dismiss in lieu of filing an Answer. (ECF No. 66). Although being ordered to respond to the motion (ECF No. 68), and being granted an extension

of time to do so (ECF No. 71), Williams has failed to respond. Consequently, the Court will rule on this motion without the benefit of a response from Williams.

## II. Discussion

Defendants assert several theories on which they argue that a partial motion to dismiss is warranted. First, Defendants argue that Williams has failed to establish the requisite personal involvement of Defendants Wetzel, the Grievance Coordinators, Callaway, Silbaugh and Linderman. Next, Defendants argue that Williams's claims against the DOC Defendants in their official capacities are barred by the Eleventh Amendment and that SCI Fayette should be dismissed pursuant to Eleventh Amendment immunity. And last, Defendants argue that Williams lacks standing to assert a claim under RLUIPA. The Court will address each of these arguments in turn.

A.  <u>Claims Brought Under 42 U.S.C. § 1983</u>

Title 42, United States Code, section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*1. Lack of Personal Involvement as for Defendants Wetzel, House, Varner, Moore, Calloway, Linderman, and Silbaugh*

The United States Court of Appeals for the Third Circuit has explained that there are two theories of supervisory liability in a § 1983 action: (1) supervisors can be liable in their official capacity if they established and maintained a policy, practice, or custom which directly caused constitutional harm; or, (2) they can be liable personally if they participated in violating the plaintiff's rights, directed others to violate them, or, as persons in charge, had knowledge of

and acquiesced in their subordinates' violations. *Santiago v. Warmister Twp.*, 629 F.3d 121, 128-29 n.4 (3d Cir. 2010).

First, as to Defendant Wetzel, the Secretary of the Department of Corrections, the Complaint is void of any factual allegation that Defendant Wetzel established or maintained a policy, practice, or custom which directly caused constitutional harm to Williams or that Defendant Wetzel participated in violating Williams's rights or had knowledge or acquiesced in his subordinates' alleged violations. As a result, the Court agrees with Defendants that Williams's contention of Wetzel's personal involvement in any purported constitutional deprivation is not "plausible on its face." *Iqbal*, 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 570). For these reasons, the motion to dismiss Williams's claims against Defendant Wetzel will be granted and Defendant Wetzel will be dismissed with prejudice as amendment would be futile.

Defendants next assert that Williams has insufficiently alleged the personal involvement of Defendants House, Varner, and Moore in any purported constitutional deprivation. These three defendants are Grievance Coordinators and it is clear from the allegations of the Complaint that Williams is seeking to hold these defendants liable solely based on their role in the inmate grievance process. Involvement in the grievance process, however, does not necessarily establish the actual knowledge necessary for personal involvement for a § 1983 claim. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Accordingly, the motion to dismiss Williams's claims against Defendants House, Varner, and Moore will be granted and these defendants will be dismissed with prejudice as amendment would be futile.

As to Defendant Callaway, the Complaint reflects that she is in the Inmate Accounting Officer at SCI-Fayette and that $62.90 had been deducted by the Accounting Office from

Williams's inmate account for the purchase of his religious books. There is no allegation that the deduction was improper. In fact, the Complaint is void of any factual allegation that Defendant Callaway had any involvement or any actual knowledge of the deduction being made or of the constitutional violations alleged. Thus, the motion to dismiss Williams's claims against Defendant Callaway will be granted and she will be dismissed with prejudice as amendment would be futile.

As to Defendant Silbaugh, the Mailroom Supervisor, the only allegation in the Complaint is that she responded by letter or other correspondence that "if they (i.e. the Plaintiff's books) came here (SCI-Fayette's Mailroom) (Plaintiff) would have gotten them." This sole allegation is not sufficient to establish personal involvement. The Complaint is void of any allegation tending to show Silbaugh's personal involvement, whether as a supervisor or otherwise, in any alleged constitutional violation of Williams's rights. Thus, the motion to dismiss Williams's claims against Defendant Silbaugh will be granted and she will be dismissed with prejudice as amendment would be futile.

And as for Defendant Linderman, it appears Williams has named this defendant on the basis of her role as former mailroom supervisor at SCI-Fayette. However, the Complaint is void of any factual allegations indicating that Linderman had any personal involvement, whether as a supervisor or otherwise, in any alleged constitutional violation of Williams's rights. Therefore, the motion to dismiss Williams's claims against Defendant Linderman will be granted and she will be dismissed with prejudice as amendment would be futile.

2. *Official Capacity Claims*[4]

Defendants seek to have all § 1983 claims against them in their official capacities dismissed because they are entitled to immunity under the Eleventh Amendment to the United States Constitution.

The Eleventh Amendment bars suits against a state in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984).  Eleventh Amendment immunity also extends to agencies, instrumentalities, or arms of the state. *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 280 (1977). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) (*citing Alabama v. Pugh*, 438 U.S. 781 (1978).  A state agency's immunity extends to individual defendants sued in their official capacities.

There are exceptions to Eleventh Amendment immunity, such as when a state waives its immunity and consents to suit in federal court, or where Congress has specifically abrogated the state's Eleventh Amendment immunity in legislation or a particular statute. *See College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd*., 527 U.S. 666, 670 (1999). No such exceptions to immunity apply. The Commonwealth of Pennsylvania has not consented to suit in federal court, s*ee* 42 Pa. Cons. Stat. § 8521(b); *Laskaris v. Thornburgh*, 66 F.3d 23, 25 (3d Cir. 1981), and Congress has not abrogated the States' immunity from section 1983 claims. *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

At all times relevant to this lawsuit, each of the Defendants were employees or officials employed by the Pennsylvania Department of Corrections.  As a result, the Court agrees with

---

[4] The Court notes that Defendants do not challenge Plaintiff's claims against the defendants in their individual capacities for violating his First and Fourteenth Amendment rights.

8

Defendants and finds that to the extent that Williams has named Defendants in their official capacities, such claims will be dismissed with prejudice as amendment would be futile as such claims are barred by the Eleventh Amendment. *See, e.g.*, *Braun v. State Corr. Inst. at Somerset*, No. 2:13-cv-1102, 2010 WL 10398, *5–6 (W.D.Pa. June 20, 2010) ("a section 1983 action against a state official in his official capacity is not a suit against the person but it is a suit against itself and as such, the action is barred by the Eleventh Amendment.").

3. *SCI-Fayette*

Similarly, Defendants argue that Defendant SCI-Fayette is also entitled to Eleventh Amendment immunity. The Court agrees with this argument.

The DOC, which administers all state correctional institutions including SCI–Fayette, is an agency or arm of the Commonwealth of Pennsylvania. Thus, the DOC and its respective institutions are entitled to the same Eleventh Amendment immunity that the Commonwealth enjoys. *See Steele v. Pennsylvania*, 2009 WL 614800, at *8 (W.D.Pa. Mar. 6, 2009). Moreover, SCI-Fayette is not a "person" against whom a civil rights action may be brought under Section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, (1989).

Accordingly, Williams's claims against SCI-Fayette will be dismissed with prejudice as amendment would be futile.

B.    Claims Brought Under The Religious Land Use and Institutionalized Person Act

Defendants' last argument is that Williams fails to state a claim under The Religious Land Use and Institutionalized Person Act (RLUIPA). "Congress passed RLUIPA to grant heightened protection to prisoners from burdens imposed by the government." *Washington v. Klem*, 497 F.3d 272, 276 (3d Cir. 2007). Section 3 of RLUIPA governs religious exercise by institutionalized persons and provides:

9

Case 2:20-cv-00663-CRE   Document 73   Filed 11/08/21   Page 10 of 12

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, the plaintiff bears the burden of showing that his religious exercise has been burdened by a prison institution's policy or official practice and that the burden is substantial. *Holt v. Hobbs*, 574 U.S. 352, 257 (2015); *Washington*, 497 F.3d at 277-78. The Third Circuit Court of Appeals has found that under RLUIPA, "[a] substantial burden exists where: "1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington,* 497 F.3d at 280.

At the outset, the Court notes that RLUIPA does not permit actions against state officials in their individual capacities. *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012). Moreover, RLUIPA does not authorize money damages against state officials acting in their official capacities absent a valid abrogation by Congress or consent of the State. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Congress did not validly abrogate or purport to abrogate the States' sovereign immunity claims under RLUIPA, *Sossamon v. Texas*, 563 U.S. 277 (2011), nor has Pennsylvania waived its Eleventh Amendment immunity. *See Scott v. Beard*, 252 F. App'x 491 (3d Cir. 2007) (holding that "RLUIPA claim for money damages against defendant in his official capacity - as claim essentially against state itself - is barred by the Eleventh Amendment") (*citing Laskaris v. Thornburgh*, 661 F.2d 23, 25-26 (3d Cir. 1981) (*citing Edelman v. Jordan*, 415 U.S. 651 (1974)).

In light of the foregoing, money damages are not permitted under RLUIPA against the Defendants in either their individual or official capacities, this leaves only Williams's request for injunctive relief, in which he requests that "Pennsylvania, Department of Corrections, Security Processing Center, process, expedite, and deliver Plaintiff's Religious books." Complaint, at 15.

Taking the allegations of the Complaint as true and liberally construing them in Williams's favor, the Court finds that Williams's contention that Defendants violated RLUIPA is not "plausible on its face." *Iqbal*, 556 U.S. at 678. The Complaint is void of any allegations that Defendants acted pursuant to <u>any</u> DOC policy or regulation, much less a policy that places "substantial burdens" on his religious exercise. The Complaint is also void of any factual allegations that Defendants' alleged conduct forced Williams to choose between following the precepts of his religion and forfeiting the benefits otherwise generally available to other inmates versus abandoning one of the precepts religion in order to receive a benefit. Nor is there any allegation that Williams was substantially pressured to modify his behavior and violate his beliefs. *See Washington v. Grace*, 445 F. App'x 611 (3d Cir. 2011) (finding that "damage and destruction to [plaintiff's] religious literature that he describes does not violate RLUIPA because [plaintiff] has not shown that these actions 'substantial[ly] burden[ed] his religious practice.'"). For these reasons, Williams's RLUIPA claims will be dismissed with prejudice as amendment would be futile.

### III.     Conclusion

For all these reasons, Defendants' motions to dismiss or in the alternative motion for summary judgment will be denied in part and granted in part as follows:

11

1. The motion for summary judgment will be denied without prejudice to Defendants raising the issue of exhaustion of administrative remedies after discovery.

2. Defendants Wetzel, House, Varner, Moore, Callaway, Silbaugh, and Linderman will be dismissed with prejudice for lack of personal involvement;

3. All § 1983 claims against Defendants in their official capacities will be dismissed with prejudice as barred by the Eleventh Amendment;

4. All § 1983 claims against SCI-Fayette will be dismissed with prejudice as barred by the Eleventh Amendment and SCI-Fayette is not a "person" under 42 U.S.C. § 1983; and

5. All claims brought under The Religious Land Use and Institutionalized Person Act will be dismissed with prejudice.

Dated: November 8, 2021                 /s Cynthia Reed Eddy
                                                        Cynthia Reed Eddy
                                                        Chief United States Magistrate Judge

cc: **RASHAD WILLIAMS**
     QC-3320
     SCI-Fayette
     SPECIAL MAIL-OPEN ONLY IN PRESENCE OF PLAINTIFF
     50 Overlook Drive
     LaBelle, PA 15450

     **Phillip E. Raymond**
     PA Office of Attorney General
     (via ECF electronic notification)