IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| RASHAD WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) 2:20-CV-00663-CRE |
| | ) |
| vs. | ) |
| | ) |
| MICHAEL OPPMAN, MARK CAPOZZA, WARDEN AT SCI-FAYETTE; AND BENJAMIN LIEDHECKER, LT. OF CENTRAL OFFICE AND DIRECTOR OF SPC; | ) |
| | ) |
| Defendants, | ) |

**MEMORANDUM OPINION**[1]

**I.   INTRODUCTION**

This is a *pro se* prisoner civil rights action brought pursuant to 42 U.S.C. §1983 for violations of the First and Fourteenth Amendments for the alleged deprivation of spiritually based books. (ECF No. 20 and No. 100, p. 1). Pending before the Court are cross Motions for Summary Judgment. (ECF Nos. 100, 103). After careful consideration the Motions and related documents and for the following reasons, Plaintiff's Motion (ECF No. 100) is denied as moot and Defendants' Motion (ECF No. 103) is granted.

**II.   PROCEDURAL AND FACTUAL BACKGROUND**

*Pro se* Plaintiff Rashad Williams ("Williams") initiated this case asserting violations of his civil rights pursuant to 42 U.S.C. §1983 for the alleged failure to deliver religious books to

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. See 28 U.S.C. § 636, et seq.

him while incarcerated. (ECF No. 20 and No. 100, p. 1). By Opinion and Order dated November 8, 2021, Defendants Wetzel, House, Varner, Moore, Callaway, Silbaugh, Linderman,[2] and SCI-Fayette were dismissed. (ECF Nos. 73, 74). All claims pursuant to the Religious Land Use and Institutionalized Person Act were dismissed as well. *Id.* Discovery is complete. Williams and the remaining Defendants, Michael Oppman, Mark Capozza, and Benjamin Liedhecker[3] (collectively referred to as "Defendants") filed cross Motions for Summary Judgment. (ECF Nos. 100, 103). The parties have filed supportive and responsive documents.[4] (ECF Nos. 104-107, 111). The Court construes Williams' "Declaration" (ECF No. 111) as his response to Defendants' Motion for Summary Judgment. As a result, the Motions are ripe for consideration.

On May 23, 2019, Williams ordered various religious books from the Islamic Bookstore ("IBS"). The SCI-Fayette inmate accounting office deducted $62.90 from his inmate account for pre-payment of the religious books. On June 13, 2019, IBS generated a notice advising Williams that the books he ordered were out of print and that he had a credit of $62.90.[5] (ECF No. 106-2). On August 26, 2019, IBS generated another notice (originally dated July 9, 2019) that Williams' order was delivered on August 5, 2019 to Security Processing Center ("SPC") in Bellefonte, Pennsylvania. (ECF No. 106-9). On August 29, 2019, Williams utilized form DC-135A (Inmate's Request to Staff Member) to inquire from Defendant Oppman about the location of his ordered books. (ECF No. 106-3). On September 12, 2019, Defendant Oppman responded

---

[2] Defendants Linderman and Silbaugh were substituted for the John/Jane Doe Defendants.

[3] Defendant Liedhecker was substituted for John/Jane Doe Director of SPC and John/Jane Doe Lts. Central Office.

[4] The Court notes that Williams did not respond to Defendants' Statement Of Material Facts Not In Dispute. (ECF No. 105).

[5] After that, Williams appears to have selected different books. (ECF No. 106-9).

indicating "I no longer supervise the mailroom but I did call and ask them. It has not arrived here yet. They said it must still be at the processing center. When it arrives they will forward to you." *Id.* Williams also sent a letter dated October 10, 2019, to the Security Processing Center regarding the same. (ECF No. 106-4).

On November 15, 2019, Williams filed an official grievance (Grievance #835100) about his missing religious books. (ECF No. 106-5, p. 5). This is the only grievance filed by Williams related to this matter. On November 19, 2019, Grievance #835100 was rejected as untimely for failure to submit the official grievance within fifteen working days after the events upon which his claims were based.[6] (ECF No. 106-5, p. 4). Williams appealed the rejection of his grievance through the administrative review process. (ECF No. 106-5). Specifically, on December 11, 2019, the facility manager, Defendant Capozza, upheld the initial determination of untimeliness and on January 7, 2020, the SOIGA issued the final appeal decision upholding the initial response and dismissing Williams' Grievance #835100. (ECF Nos. 106-5, pp. 1-2). Thereafter, Williams initiated the within action.

### III. STANDARD OF REVIEW

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings,

---

[6] Other correspondence regarding the subject religious books transpired after the filing of Grievance #835100. For example, sometime after November 15, 2019, Williams addressed a letter to Defendant Wetzel regarding the location of the books and referencing Grievance #835100. (ECF No. 111-1, p. 2). On November 23, 2019, Defendant Liedhecker sent an email to Williams' unit counselor Susie Sherman regarding the same. (ECF No. 106-7). On November 25, 2019, Williams again utilized form DC-135A (Inmate's Request to Staff Member) to inquire from Defendant Capozza about the location of his ordered books. (ECF No. 111-1, p. 3). On December 5, 2019, Defendant Capozza responded stating "I will forward this to our mailroom supervisor." *Id.* An additional person thereafter responded "All books that we have received from the SPC has (sic) been sent in. If they were received here, you would of (sic) had them." *Id.*

3

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Hudson v. Proctor & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *Id*. "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita*, 475 U.S. at 587; *Huston*, 568 F.3d at 104.

Notably, these summary judgment rules do not apply any differently where there are cross-motions pending. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). As stated by the Court of Appeals for the Third Circuit, "'[c]ross-motions are no more than a claim by each side

that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" *Id*. (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241,245 (3d Cir. 1968)). If review of cross-motions reveals no genuine issue of material fact, then judgment may be granted in favor of the party entitled to judgment in view of the law and undisputed facts. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

This standard is somewhat relaxed with respect to pro se litigants. Where a party is representing himself pro se, the complaint is to be construed liberally. A pro se plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000); *see also, Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").

**IV.    DISCUSSION**

    **A.    Defendants' Motion for Summary Judgment**

Before discussing the merits of Defendants' Motion for Summary Judgment (ECF No. 103), this Court, as a threshold matter, must first decide whether Williams has exhausted his administrative remedies. *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018). Defendants assert they are entitled to summary judgment as to all remaining claims against them because Williams failed to exhaust his administrative remedies in accordance with the Prison Litigation

Reform Act of 1996 ("PLRA").  (ECF No.  104).  Specifically, Defendants maintain judgment in their favor is warranted as a matter of law because Williams did not timely file a grievance regarding the facts at issue within the requirements of DC-ADM 804 thereby failing to properly exhaust his administrative remedies.   *Id.* at pp. 3-6.

The PLRA prohibits an inmate from bringing a civil rights action pursuant to §1983 alleging acts of unconstitutional conduct by prison officials "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

> The analytical structure for a failure-to-exhaust affirmative defense is well-established.
>
> As formulated in this Circuit, the failure-to-exhaust affirmative defense has two distinct stages. The first inquiry is whether the prison-employee defendants can demonstrate that the inmate failed to exhaust the on-the-books remedies. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (explaining that the prison's grievance policy supplies " 'the yardstick' for determining what steps are required for exhaustion" (quoting *Spruill v. Gillis,* 372 F.3d 218, 231 (3d Cir. 2004))); *see also Ross v. Blake*, 578 U.S. 632, 643 (2016); *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). If the defendants can make that showing, then at the second stage, the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her. *See Rinaldi*, 904 F.3d at 268.

*West v. Emig,* 787 F. App'x 812, 814 (3d Cir. 2019) (non-precedential)(footnote omitted).

The United States Supreme Court has construed the PLRA as requiring "proper" exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88). Because "prison grievance procedures supply the yardstick for measuring procedural default,"

*Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004), inmates who fail to fully complete the prison grievance process are barred from subsequently litigating those claims in federal court. *See Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000). Since proper exhaustion requires compliance with an agency's deadlines, the "'filing [of] an untimely or a procedurally defective administrative grievance or appeal' does not satisfy the PLRA's exhaustion requirement" and precludes action in federal court. *Holmes v. PA Dep't of Corr.*, No. 3:17-CV-1567, 2020 WL 4041054, at *4 (M.D. Pa. July 17, 2020), quoting *Woodford,* 548 U.S. at 90; *Spearman v. Morris,* 643 F. App'x 82 (3d Cir. 2016); *Fennell v. Cambria County Prison*, 607 F. App'x 145, 149-50 (3d Cir. 2015) citing, *Woodford,* 548 U.S. at 84, 90-91 and *Spruill*, 372 F.3d at 230.

The exhaustion requirement is mandatory. *Woodford,* 548 U.S. at 85. It is a "bright-line rule" and "it is beyond the power of this court – or any other- to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy, or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). District courts have no discretion to decide whether exhaustion should be excused. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).

DC-ADM 804 is the Pennsylvania Department of Corrections ("DOC") "Inmate Grievance System." *See*, DC-ADM 804 Policy Statement, online at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf (effective May 1, 2015)(last visited May 24, 2023). "It is the policy of the Department that every individual committed to its custody shall have access to a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement. For every such issue, there shall be a forum for review and two avenues of appeal." *Id.* at p. 1. To that end, the DC-ADM 804 grievance system sets forth three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility grievance

coordinator using the DC-804, Part 1 form within fifteen working days of the incident, at which time the facility coordinator will assign a tracking number to the grievance and will responds in writing within fifteen business days.  *See*, DC-ADM 804, §§1.A, C.  DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," and shall include, *inter alia,* "the date, approximate time, and location of the event(s) that gave rise to the grievance," "shall  identify individuals directly involved in the events," and "shall specifically state any claims he wishes to make concerning violations of Department directives, regulations, court orders, or other law." DC-ADM 804, §1.A.11.  While the DC-ADM 804 grievance system encourages prisoners to attempt to resolve concerns informally by use of a DC-135A form (Inmate Request to Staff Member form), "[w]hen an inmate has a concern that he/she is unable to resolve, the inmate must submit his/her grievance to the Facility Grievance Coordinator/designee using the DC-804, Part 1" form within fifteen working days of the incident. *Id.* at §1.A.3, 5, 8.

Second, the inmate must timely submit a written appeal within fifteen working days from the date of the initial review, and again the inmate will receive a written response thereto within fifteen working days.  *Id.* at §2.A.  Finally, the inmate must submit a timely appeal for final review to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days, and the inmate will receive a final determination in writing within thirty days thereafter.  *Id.* at §2.B.

In this case, the records indicate that by August 26, 2019, at the very latest, Williams was aware that there was an issue with the delivery of his religious books from IBS. (ECF No.  106-9).  Williams, however, waited until November 15, 2019 to file Grievance #835100, related to the same. (ECF No.  106-5, p. 5).  Grievance #835100 was rejected on November 19, 2019 because it was not submitted within fifteen working days after the events upon which Williams' claims

are based. (ECF No. 106-5, p. 4). On November 22, 2019, Plaintiff filed an appeal of the same. (ECF No. 106-5, p. 3). The Facility Manager, Defendant Capozza, upheld the initial rejection as untimely. (ECF No. 106-5, p. 2). Williams then filed a final appeal which also held that that Grievance #835100 was properly rejected. (ECF No. 106-5, p. 1). Based on the above, there is no genuine issue of material fact that Williams failed to comply with the grievance procedure set forth in DC-ADM 804. As stated previously, a rejection of a grievance for failure to comply with grievance procedure is not proper exhaustion. *Spearman, v. Morris,* 643 F. App'x 82 (3d Cir. 2016), affirming *Spearman v. Morris,* No. 14-1751, 2015 WL 6604312 (W.D. Pa. October 7, 2015). Therefore, this Court finds that Defendants have met their burden of demonstrating Williams failed to exhaust his administrative remedies.

> With respect to the events at issue Williams responds, in pertinent part, as follows:
>
> [O]n May 23, 2019, I submitted $62.90 to inmate accounting to forward to Islamic Book Store ("IBS"), for Islamic books according to the Hanafi Math-Hab (School) i.e. Sunni Jurisprudence.
>
> After due time, I sent (IBS) a missive inquiring about books ordered, (IBS) responded via invoice that books were forwarded to Security Processing Center ("SPC") on August 5, 2019.
>
> I wrote a request to staff to the Business Manager Mr. Oppman on 8/29/2019, to (SPC) in October 2019, a grievance 11/15/2019, and to Mr. Wetzel on 11/20/2019, inquiring about pre-ordered religious books.
>
> I have submitted numerous requests to staff, grievance and a complaint according to the Department of Corrections Inmate Handbook (2017). 1. DC-ACM-804, Inmate Grievance System, (DC_ADM_804) #1. DC-ADM-804, Inmate Grievance System Procedures Manual Section 1-Grievance and Initial Review.
>    A. Filing of an initial grievance #3. Attached to this Declaration.

(ECF No. 111, p. 1). Construing William's declaration in opposition to Defendants' Motion for Summary Judgment liberally, Williams seems to be suggesting the filing of his DC-135A form

(Inmate's Request to Staff Member) somehow extended the time to file his official grievance. *See,* ECF No. 111 and attached exhibits.  This suggestion, however, is without merit.

To begin with, while Williams attempted to informally resolve the matter by using Form DC-135A (ECF No. 106-3) and by sending correspondence to SPC (ECF No. 106-4), nothing in DC-ADM 804 indicates that unofficial attempts to resolve a grievance toll or otherwise extend the time to file an official grievance.  To the contrary, DC-ADM 804 specifically provides that "[w]hen an inmate has a concern that he/she is unable to resolve, the inmate **must** submit his/her grievance to the Facility Grievance Coordinator/designee using the DC-804, Part 1" form within fifteen working days of the incident.  *Id.* at §1.A.3, 5, 8 (emphasis added).  Furthermore, while DC-ADM 804 does allow for a time extension for filing a grievance, the prisoner "**must** notify the Facility Grievance Coordinator/designee of the reason for the delay" and at that point, the coordinator will consider the same.  *Id.* at §1.C.2 (emphasis added).  In this case, there is no evidence that Williams sought a time extension for the filing of an official grievance.

Viewing the facts in the light most favorable to Williams, the records provided to this Court establish unequivocally that Plaintiff did not file an official grievance until November 15, 2019, well beyond the 15 workday requirement clearly set forth in the PA DOC Inmate Grievance System. Williams does not argue that the administrative process was not available to him. Nothing in the response to the DC-135A forms is misleading about, or in any was at odds with, the grievance process.  *See,* ECF No. 106-3.  There is no evidence that Williams was prevented in any way from filing a timely formal grievance according to DC-ADM 804.  It is clear from the facts that Williams had access to the administrative review process and could have pursued his administrative remedies within the time allotted.  Williams does not suggest otherwise.

Consequently, Williams' noncompliance with DC-ADM 804 requires dismissal of this action as his claims are barred for the failure to properly exhaust administrative remedies.

Thus, summary judgment in favor of Defendants is warranted. Accordingly, Williams' remaining claims will be dismissed with prejudice.[7]

### B. Williams' Motion for Summary Judgment

Since this Court has dismissed all remaining claims for failure to properly exhaust administrative remedies, Williams' Motion for Summary (ECF No. 103) is now moot and will denied as such. Nonetheless, for clarity purposes, the Court notes that none of the assertions raised by Williams therein[8] address or change the fact that Williams did not file any grievance regarding the subject religious books until November 15, 2019, when he filed Grievance #835100. (ECF No. 106-5, p. 5). As set forth above, this is well beyond the 15 workday requirement clearly set forth in the PA DOC Inmate Grievance System. *See*, DC-ADM 804, §§1.A.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 103) is granted and Williams' Motion for Summary Judgment (ECF No. 100) is denied as moot.

---

[7] Williams defines his case as a "1983 civil action…seeking damages for violations of the First and Fourteenth Amendments." (ECF No. 100). Since this Court has granted summary judgment as to the remaining §1983 claims for failure to properly exhaust administrative remedies, the Court need not discuss any alternative issues raised by Defendants in their Motion for Summary Judgment as they are now moot. *See,* ECF Nos. 103, 104. Nonetheless, the Court notes that Williams does not address, discuss, reference, present any evidence, or otherwise raise any genuine issues as to these arguments in his Declaration or in his Motion for Summary Judgment. *See,* ECF Nos. 100, 111. Thus, suffice is to say, summary judgment in favor of Defendants would be warranted even if not this Court did not grant summary judgment in favor of Defendants for failure to properly exhaust administrative remedies.

[8] In his Motion for Summary Judgment, Williams asserts that there is no genuine issue that $62.90 was deducted from his inmate account, that the subject books were sent by IBS on August 5, 2019 and delivered to DOC Security Processing Center in Bellefonte, that "his name or number was not made part of the SPC log verifying that the books were delivered to" him, and that he did not receive the books. (ECF No. 100, p. 2).

An appropriate order shall follow.

DATED this 25th day of May, 2023.

                                              BY THE COURT:

                                              /s Cynthia Reed Eddy
                                              Cynthia Reed Eddy
                                              United States Magistrate Judge

cc:      Rashad Williams
          QC-3320
          SCI-Fayette
          Special Mail – Open Only In the Presence of Plaintiff
          50 Overlook Drive
          LaBelle, PA 15450

          Dalia Aboraya
          PA Office of Attorney General
          (via ECF electronic notification)